CALLAGY LAW
*A Limited Liability Company*
Benjamin D. Light, Esq.
Mack-Cali Centre II
650 From Road – Suite 565
Paramus, New Jersey 07652
Telephone:   (201) 261-1700
Facsimile:    (201) 261-1775
E-mail:        blight@callagylaw.com

*Attorneys for Plaintiff, Demodulation, Inc.*

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DEMODULATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Civil No. 1:11-cv-236-SGB <br><br> The Hon. Thomas C. Wheeler <br><br><br> *Filed Electronically* |

### MEMORANDUM OF LAW IN OPPOSITION TO THE UNITED STATES' MOTION TO FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNT THREE OF DEMODULATION'S THIRD AMENDED COMPLAINT

*Of Counsel:*

    Benjamin D. Light, Esq.

*On the Brief:*

    Benjamin D. Light, Esq.

**Table of Contents**

Table of Authorities..................................................................................................................ii

Preliminary Statement ............................................................................................................. 1

Statement of Facts....................................................**Error! Bookmark not defined.**

Legal Argument ....................................................................................................................... 3

    I.    The Court Cannot Take Judicial Notice at the Summary Judgment Stage.  4

    II.    The Failure to Pay Patent Maintenance Fees Does Not Necessarily Limit the Damages Available to Demodulation. ..................................................... 6

    III.    Demodulation was the Exclusive Licensee of Patent '591 and may Recover Damages for Infringement Thereof. ............................................................ 10

    IV.    Partial Summary Judgment is Not Appropriate as Discovery is Required to Fully Oppose the Motion............................................................................. 12

Conclusion .............................................................................................................................. 13

# Table of Authorities

**Cases**

*Adickes v. S.H. Kress & Co.*

    398 U.S. 144 (1970) ........................................................................................... 3

*Alabama v. North Carolina*

    560 U.S. 330 (2010) ........................................................................................... 3

*Alfred E. Mann Found. For Scientific Res. v. Cochlear Corp.*

    604 F.3d 1354 (Fed. Cir. 2010) ......................................................................... 2

*Anderson v. Liberty Lobby, Inc.*

    477 U.S. 242 (1986) .................................................................................. 3, 4, 13

*Bennet v. Medtronic, Inc.*

    285 F.3d 801 (9th Cir. 2002) ............................................................................. 5

*Brunswick Corp. v. United States*

    22 Cl.Ct. 278 (1991) .......................................................................................... 10

*Celotex Corp. v. Catrett*

    477 U.S. 317 (1986) ...................................................................................... 4, 13

*Chevron U.S.A. Inc. v. United States*

    72 Fed. Cl. 817 (Fed. Cl. 2006) ....................................................................... 13

*Chisolm v. McManimon*

    275 F.3d 315 (3rd Cir. 2001) ............................................................................. 4

*Clear Creek Community Services District v. United States*

    100 Fed. Cl. 78 (Fed. Cl. 2011) ....................................................................... 13

**Cases**

*Demodulation, Inc. v. United States*

    111 Fed.Cl. 663 (Fed. Cl. 2013) .................................................................................. 1, 2

*Emory v. Astrazeneca Pharmaceuticals LP*

    401 F.3d 174 (3rd Cir. 2005) .......................................................................................... 4

*Ethicon, Inc. v. United States Surgical Corporation*

    135 F.3d 1456 (Fed. Cir. 1998) .................................................................................... 10

*Gelfand v. North American Capacity Insurance Company*

    2013 WL 3369266 (N.D.Cal. July 5, 2013) ................................................................... 5

*Hunt v. Cromartie*

    526 U.S. 541 (1999) ....................................................................................................... 3

*Ideal Farms, Inc. v. John Labatt, Ltd.*

    90 F.3d 737 (3rd Cir. 1996) ............................................................................................ 4

*In re Smith*

    231 B.R. 130 (M.D. Ga. 1999) .................................................................................... 5, 6

*Independent Wireless Teleg. Co. v. Radio Corp. of America*

    269 U.S. 459 (1926) ..................................................................................................... 10

*Kingman Reef Atoll Development, L.L.C. v. United States*

    ----Fed.Cl.---- 2014 WL 2958822 (Fed. Cl. June 30, 2014) ...................................... 3

*Ladd v. United States*

    648 F.3d 648 (Fed. Cir. 2013) ....................................................................................... 3

*Leesona Corp. v. United States*

    599 F.2d 958 (Ct. Cl.), *cert. denied*, 444 U.S. 991 (1979) ......................................... 9

**Cases**

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986) ................................................................................................. 4

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   240 F.3d 1016 (Fed. Cir. 2001) .............................................................................. 11

*Opryland USA Inc. v. Great American Music Show*
   970 F.2d 847 (Fed. Cir. 1992) ..................................................................... 8, 10, 11

*Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*
   52 F.3d 1026 (Fed. Cir. 1995) ........................................................................ 11, 12

*Pratt & Whitney Co. v. United States*
   139 Ct.Cl. 540 (Ct. Cl. 1957) ................................................................................. 10

*Standard Manufacturing Co. v. United States*
   42 Fed. Cl. 748 (Fed. Cl. 1999) ............................................................................... 9

*Tektronix, Inc. v. United States*
   552 F.2d 343 (Ct. Cl.), *modified*, 557 F.2d 265 (Ct. Cl. 1977), *after remand*, 575
   F.2d 832, *cert. denied*, 439 U.S. 1048 (1978) ........................................................ 9

*Trans-Sterling Inc. v. Bible*
   804 F. 2d 525 (9th Cir. 1986) .................................................................................. 4

*United States v. Byrnes*
   644 F. 2d 107 (2nd Cir. 1981) ................................................................................. 4

*United States v. Jones*
   29 F. 3d 1549 (11th Cir. 1994) ................................................................................ 4

*Vallot v. Central Gulf Lines Inc.*
   641 F.2d 347 (5th Cir. 1981) ................................................................................... 4

**Cases**

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*

    944 F.2d 870 (Fed. Cir. 1991) ................................................................................11

*Waterman v. Mackenzie*

    138 U.S. 252 (1891) ................................................................................................11

**Rules**

F.R.E. 201(b) ................................................................................................................ 4

F.R.C.P. 56 ................................................................................................................... 3

F.R.C.P. 56(a) .............................................................................................................. 3

F.R.C.P. 56 (c) ............................................................................................................. 3

F.R.C.P. 56(d) ........................................................................................................... 13

F.R.C.P. 56(f) ............................................................................................................ 13

R.C.F.C. 56 .................................................................................................................. 3

R.C.F.C. 56(a) ............................................................................................................. 3

R.C.F.C. 56(d) ........................................................................................................... 11

**Other**

*Wright and Graham, Federal Practice and Procedure* (2000 Supplement)

    Vol. 21, § 5104 ........................................................................................................ 5

## **Preliminary Statement**[1]

For the second time[2], the United States[3] has filed a motion for summary judgment before discovery has been completed by the parties. The purpose of the United States' motion is to limit the scope of discovery and the patent infringement damages available to Demodulation[4] before the timing and scope of the United States' infringing activities have been disclosed.

Part one of the United States motion seeks partial summary judgment in an attempt to disclaim liability for *any* alleged manufacture or use of the inventions claimed United States Patents No.'s 5,557,085 (the "'085" patent), 5,576,693 (the "'693" patent), 6,018,297 (the "'297" patent), 6,137,411 (the "'411" patent), 6,225,905 (the "'905" patent), 6,232,879 (the "'879" patent), 6,417,771 (the "'771" patent), 1,071,417 (the "'417" patent), 7,075,439 (the "'439" patent), 7,233,249 (the "'249" patent), 7,354,645 (the "'645" patent), and 7,368,166 (the "'166" patent), because they have each expired.

---

[2] On September 10, 2012, the United States filed a motion for partial summary judgment as to U.S. Patents No.'s 6,417,771 (the "'771" patent), 1,071,417 (the "'417" patent), 7,075,439 (the "'439" patent), 7,233,249 (the "'249" patent), 7,354,645 (the "'645" patent), 7,368,166 (the "'166" patent) and 6,270,691 (the "'591" patent) arguing that: (1) the '771, '417, '439, '249, '645 and '166 patents expired and that the United States could not be held liable for any alleged manufacture or use of the inventions claimed after the expiration date; and (2) the United States could not be held liable to Demodulation for any use of patent '591 because Demodulation was not the record owner. In a published opinion, the Court granted the United States' motion: (1) solely as to the post-expiration infringement claims as to the '166, '249, '417, '429, '645 and '771 patents; and (2) determining that Demodulation did not have standing to enforce the '591 patent. *Demodulation, Inc. v. United States*, 111 Fed.Cl. 663, 675-76 (Fed. Cl. 2013).

[3] The Third Amended Complaint refers to the United States as the "Government." For purposes of this Opposition, the terms "United States," "Government" and "Defendant" are all meant to be interchangeable despite all terms being used throughout unless otherwise specified.

[4] For the purposes of this Opposition, Demodulation, Inc., will be referred to as "Demodulation" or "Plaintiff" unless otherwise specified.

1

Gov't. Mot. 1.[5]  This argument is virtually identical to the United States' argument back in September 10, 2012.  Even at that juncture, this Court held that the United States' attempt to limit its damages under Demodulation's patent infringement claims was too broad.  This Court held, "Demodulation retains standing to seek an adjudication of pre-expiration infringement as to the [expired patents[6]], and [Demodulation] may eventually be able to seek damages for ongoing infringement of [certain expired patents][7]." *Demodulation, Inc.*, 111 Fed.Cl. at 671.

Part two of the United States' motion is essentially a cut-and-paste of its September 10, 2012 motion whereby the United States argues that it is not liable for any manufacture or use of any invention claimed in United States Patent No. 6,270,591 (the "'591" patent), because Demodulation is not the "owner"; the Romanian National Institute of Research and Development for Technical Physics (the "Institute") was the owner.  Demodulation argued that as an exclusive licensee, it received all substantial rights from the Institute.  This Court previously balanced the five factors set forth in *Alfred E. Mann Found. For Scientific Res. v. Cochlear Corp.*, 604 F.3d 1354, 1360-61 (Fed. Cir. 2010), to determine whether Demodulation, as an exclusive licensee, received "all substantial rights" from the Institute.  This Court held, "Demodulation does not have an exclusive license and therefore does not have standing to enforce the '591 patent." *Demodulation, Inc.*, 111 Fed.Cl. at 675.  Demodulation was a party to an

---

[5] "Gov't Mot." refers to the United States' Motion for Partial Summary Judgment, May 9, 2014, ECF No. 55.

[6] At that juncture, the only "expired patents" were the '771, '417, '439, '249, '645, 'and 166 Patents.

[7] At that juncture, with respect to the '417, '439, and '771 Patents, the court held that Demodulation "may eventually be able to seek damages for ongoing infringement," because discovery was yet completed to support Demodulation's argument that the United States engaged in affirmative misconduct and made a misrepresentation of fact, on which Demodulation relied in allowing the '417, '439 and '771 Patents to expire.

exclusive license agreement regarding the '591 Patent.  Standing to sue for patent infringement damages under this agreement is clearly permitted by law.  A re-balancing of the five factors will result in the Court's determination that Demodulation received all substantial rights, and therefore has standing with respect to the '591 patent.

## Statement of Facts[8]

For sake of brevity, Demodulation relies upon the factual allegations contained within paragraphs 1 through and including 94 of the Third Amended Complaint as well as the exhibits referenced therein and attached thereto.  Demodulation incorporates each and every factual allegation (as well as the exhibits) of the Third Amended Complaint as if they were set forth specifically herein.

## Legal Argument

R.C.F.C. 56 mirrors Fed. R. Civ. P 56 in that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  R.C.F.C. 56(a); Fed.R.Civ.P. 56(a); *see also Kingman Reef Atoll Development, L.L.C. v. United States*, ----Fed.Cl.----, 2014 WL 2958822 * 33 (Fed. Cl. June 30, 2014); (*citing Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Ladd v. United States*, 648 F.3d 648, 651 (Fed. Cir. 2013).

Summary judgment is not appropriate when there are genuine issues of material fact. The Court must view the evidence in the light most favorable to the non-moving party. If there are genuine issues, the moving party is not entitled to summary

---

[8] For purposes of this Motion, Demodulation also relies on all documents and exhibits filed in this matter, specifically ECF No.'s 25, 25-1, 25-2 and 25-3.

judgment.  *See* Fed.R.Civ.P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *See also Emory v. Astrazeneca Pharmaceuticals LP*, 401 F.3d 174, 178 (3rd Cir. 2005). Facts are "material" if they could affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248; *see also Chisolm v. McManimon*, 275 F.3d 315, 321 (3rd Cir. 2001).  The facts must be viewed in the light most favorable to the non-moving party, in this case, Demodulation.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  All justifiable inferences must be drawn in favor of Demodulation.  *Anderson v. Liberty Lobby*, 477 U.S. at 248; *Chisolm v. McManimon*, 275 F.3d 321.  The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact.  *Ideal Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3rd Cir. 1996).

I.  **The Court Cannot Take Judicial Notice at the Summary Judgment Stage.**

The United States requests that this Court take judicial notice of certain facts pursuant to Fed. R. Evid. 201(b).  To qualify for judicial notice under Rule 201, a proffered "fact" must meet several conditions.  First, the asserted fact must be relevant to the pending action.  *Trans-Sterling Inc. v. Bible*, 804 F. 2d 525, 528 (9th Cir. 1986); *United States v. Byrnes*, 644 F. 2d 107, 112 (2d Cir. 1981); *Vallot v. Central Gulf Lines Inc.*, 641 F. 2d 347, 350 (5th Cir. 1981).  Moreover, the asserted fact must either be (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b) .  Put differently, judicial notice is appropriate only when the asserted fact is undisputed.  *United States v. Jones*, 29 F. 3d 1549, 1553 (11th Cir. 1994) ("In order for a fact to be judicially noticed under Rule

4

201(b), indisputability is a prerequisite."); *In re Smith*, 231 B.R. 130, 134 (M.D. Ga. 1999) (Judicial notice is only proper when the asserted fact has a "high degree of indisputability"). Finally, the judicial notice request must relate to specific, readily ascertainable facts, not inferences or conclusions drawn from such facts. When a court is asked to judicially notice an inference or a conclusion that might be drawn from certain facts, it is far less likely that the proffered inference or conclusion will be indisputable. *Wright and Graham, Federal Practice and Procedure* (2000 Supplement), Vol. 21, § 5104, p. 243.

With respect to taking judicial notice of certain facts at the summary judgment stage, the Court's power is discretionary. *Gelfand v. North American Capacity Insurance Company*, 2013 WL 3369266 *1 (N.D. Cal. July 5, 2013); *citing Bennet v. Medtronic, Inc.*, 285 F.3d 801 n2 (9th Cir. 2002). Furthermore, the Court in *Smith* cautioned the need for additional safeguards:

> To ensure that these safeguards are adhered to, the procedure normally followed before the court takes judicial notice is 1) a party requests that the court take judicial notice of a particular fact, 2) the court determines whether the fact is of the kind described in FRE 201(b), 3) the court notifies the parties that it is contemplating taking judicial notice of the fact, and 4) the party adversely affected by such action is given the opportunity to object.
>
> However, when the request that the court take judicial notice is contained in a motion for summary judgment the procedure as stated above cannot be followed. But this does not relieve the court from having to ensure that the fact is one with a high degree of indisputability and that the adversely affected party has an opportunity to be heard. The only way to ensure these safeguards are in place in a motion for summary judgment is to require the party who is requesting the court take judicial notice of a fact state in his statement of uncontested facts 1) the fact that he considers to have a high degree of indisputability and 2) the request that the court take judicial notice of that fact. It is necessary that

5

> the fact and request be stated in the statement of uncontested facts for two previously stated reasons: First, it is there that the movant must allege all facts necessary to prevail under the governing substantive law; and second, it is these facts which the nonmovant must contest as disputed if a genuine dispute exists.

*In re Smith*, 231 B.R. at 134-35.

In this case, the United States requests that the Court take judicial notice of thirteen separate factual allegations. Gov't. Mot. 8-10. The Court cannot take judicial notice of the United States' inferences and/or a conclusions that might be drawn from its review of internet documents. The United States has not made any assertion as to the "high degree of indisputability" of the facts upon which they seek judicial notice. Therefore, the Court must use its discretion and reject the United States' judicial notice requests.

## II. The Failure to Pay Patent Maintenance Fees Does Not Necessarily Limit the Damages Available to Demodulation.

The United States argues that Demodulation may not recover infringement damages for any infringing use of manufacture by the United States which occurred after the following dates corresponding to the following patents (which have expired as a result of their terms ending):

- The '085 patent expired September 17, 2013

- The '693 patent expired November 19, 2013

The United States also argues that Demodulation may not recover infringement damages for any infringing use or manufacture by the United States which occurred after the following dates corresponding to the following patents (which have expired as a result of the maintenance fees not being paid):

- The '771 patent expired July 9, 2010

6

- The '417 patent expired July 4, 2010
- The '439 patent expired July 11, 2010
- The '249 patent expired June 19, 2011
- The '645 patent expired April 8, 2012
- The '166 patent expired May 7, 2012
- The '297 patent expired January 25, 2012
- The '411 patent expired October 24, 2012
- The '905 patent expired May 1, 2013
- The '879 patent expired May 15, 2013

Demodulation concedes that the maintenance fees for each for each of these patents (except the '085 and '693) were not paid when due and that the six-month grace period applicable for payment of such fees expired on the dates listed above.  However, the United States' motion should not be granted because it conflicts with law governing the assessment of patent infringement damages against the United States.

There is sufficient evidence in the record even at this very early stage to find that the United States is engaged in prolific use of Demodulation's proprietary technology. *See* Declaration of Benjamin D. Light, Esq. ("Light Dec.")[9] at ¶2-6. In sum, a highly credible witness with top secret security clearance, *see* Light Dec., Ex. A (Gilbert Dep. Transcript at 10:5-14-2) has testified that he was told by a civil engineer working for the Navy Seals and a military pilot, respectively, that: 1) Demodulation's technology was the subject of extensive infringing development and testing by the Navy before 2005 where a nearly invisible short stand of microwire was remotely detected from a range of 10-20 miles, (*see Id.* at 23:5-26:13), and; 2) that the Army has deployed microwire since as

---

[9] The Light Dec., dated October 16, 2012 is located at ECF No. 25-2.

7

early as 2003 in Operation Guardrail, an aerial signals intelligence gathering mission. *See Id.* at 32:2-38:18.

This evidence supports the conclusion that the United States owed Demodulation a substantial fee for several years prior to Demodulation's failure to pay the maintenance fees and has willfully failed to pay it.  For the purposes of this motion at least, this Court must determine that an unresolved factual dispute exists as to this issue, precluding summary judgment.  Had the United States paid Demodulation for its use in a timely fashion, the maintenance fees at issue would have been paid.  *See* Declaration of James O'Keefe, Jr. ("O'Keefe Dec.")[10], ¶8.  To limit the damages for the United States' infringing use to the period of time when the maintenance fees had been paid up to date would reward the United States' failure to notify Demodulation that the United States had taken its property.

Discovery has not officially completed.  The United States is still required to finally disclose all of its use of the subject technology.  The discovery will show whether any infringement that occurred after one of the expiration dates was the result of infringement that took place prior to the expiration date.  Without this information, Demodulation does not have access to information essential to its opposition.  *See Opryland USA Inc. v. Great American Music Show*, 970 F.2d 847, 852-53 (Fed. Cir. 1992).  In light of the law concerning the assessment of patent infringement damages against the United States as discussed below, those damages may not be limited without a full exploration and disclosure of the United States' use of this technology.

The United States' ultimate claim is that Demodulation cannot establish any right to recovery after the expiration of each patent."  This statement is in direct conflict with

_____

[10] The O'Keefe Dec., dated October 16, 2012 is located at ECF No. 25-3.

8

the awarding of patent infringement damages against the United States. In such an action, damages are awarded under an "eminent domain theory" to meet the statutory mandate to pay the patent holder "reasonable and entire compensation" for the Government's use. *See, e.g., Standard Manufacturing Co. v. United States*, 42 Fed. Cl. 748, 756-58 (1999). "When determining just compensation for any type of eminent domain action, including the unlicensed use of a patent, equitable principles of fairness control." *Tektronix, Inc. v. United States*, 552 F.2d 343, 351(Ct. Cl.), *modified*, 557 F.2d 265 (Ct. Cl. 1977), *after remand*, 575 F.2d 832, *cert. denied*, 439 U.S. 1048 (1978). The preferred approach to calculating those damages is to award a reasonable royalty "plus damages for delay in payment of the royalty." *Id.* 758. Because recovery is based on eminent domain, the proper measure of compensation is "what the owner has lost, not what the taker has gained." *Leesona Corp. v. United States*, 599 F.2d 958, 969 (Ct.Cl.), *cert. denied*, 444 U.S. 991 (1979).

Here, the failure of the United States to promptly notify Demodulation of its taking of a compulsory license and to promptly pay "reasonable and entire compensation" is exactly what caused Demodulation to not be able to continue to pay the maintenance fees on the patents. *See* O'Keefe Dec., ¶8. Put another way, had the United States promptly paid the required royalty or licensing fee, the maintenance fees would have been paid. The royalties for any infringing uses after the expiration dates of the patents are therefore properly damages caused by the United States' failure to pay Demodulation for its exercise of its eminent domain powers related to patents. Equity and fairness compel this result. More specifically, equity and fairness might compel this result after a full disclosure of the facts, and Demodulation should not be precluded from those damages prior to such disclosure.

9

The United States was under an affirmative obligation to disclose its use of microwire technology to Demodulation at the time it began using it.  Without imposing this obligation on the United States, the right to "reasonable and entire compensation" is meaningless.  The United States is not permitted to take property for free unless it gets caught.  Of course, without the benefit of discovery, Demodulation is not presently able to provide the Court with fact indicating exactly when the United States first knew it was infringing Demodulation's patents and when the royalty payments were due.  If discovery reveals that the United States simply chose to ignore Demodulation's patents and has concealed its use of microwire, equity will require damages to extend *beyond* the termination of the patents for failure to pay maintenance fees.  Accordingly, the lack of discovery has prejudiced Demodulation requiring denial of the instant motion.  *See Opryland USA, Inc. v. Great American Music Show*, 970 F.2d at 852-53 .

### III. Demodulation was the Exclusive Licensee of Patent '591 and may Recover Damages for Infringement Thereof.

On April 10, 2002, Demodulation  entered an "exclusive license to practice, i.e., to make, have made, use, offer to sell, sell, transfer or dispose of the licensed invention" described by the '591 patent with the record owner, the Institute.  *See* O'Keefe Dec. ¶2. These rights in the '591 patent were transferred to Demodulation for the "life" of the patent.  *Id.*  This "exclusive license" gives Demodulation the right to sue for infringement of the '591 patent during the term of the exclusive license.  *See Independent Wireless Teleg. Co. v. Radio Corp. of America*, 269 U.S. 459, 469 (1926); *Ethicon, Inc. v. United States Surgical Corporation*, 135 F.3d 1456, 1468 n.9 (Fed. Cir. 1998); *Pratt & Whitney Co. v. United States*, 139 Ct.Cl. 540, 543 Fed. Cl. 1957); *Brunswick Corp. v. United States*, 22 Cl.Ct. 278, 281-284 (Fed. Cl. 1991).

"Where a patentee makes an assignment of *all significant rights* under the patent, such assignee may be deemed the effective "patentee" under that statute and has standing to bring suit in his own name for infringement (emphasis added)." *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995); *see also Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) As explained in the Declaration of James O'Keefe, Jr., it is clear that at this point the Court must find that Demodulation acquired all the "significant rights" to the '591 patent. *See* O'Keefe Dec. at ¶2-7. The Institute licensed to Demodulation all of the rights to the patent save the right for the Institute to continue research on microwire. *Id.* at ¶5. The term of the agreement extended for the life of the patent and the Institute agreed to refrain from licensing the patent to any other parties during the term of its agreement with Demodulation. *Id.* at ¶2-7. These facts compel a finding that the United States' motion must be denied as Demodulation has standing to assert a claim for infringement in its own name alone.

Should the Court fail to find that all "significant rights" to the '591 patent were obtained by Demodulation, it should hold only that such a finding would be premature as discovery has not been completed. Discovery would yield whether Dr. Chiriac and the Institute agree with Demodulation's position on the scope of the exclusive license granted. *See Opryland USA Inc. v. Great American Music Show*, 970 F.2d at 852-53. Since the Court must ascertain the intention of the parties and examine the substance of what was granted by the agreement, (*see, Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991)), this motion is premature under R.C.F.C. 56(d).

The only evidence concerning the nature of the agreement comes from the Declaration of Mr. O'Keefe submitted herewith. He describes the agreement as an expression of the parties' intent to give Demodulation the exclusive rights to the '591 patent, save the Institute's rights to continue his research which led to the '591 patent in the first place. There is no evidence from which the Court could conclude otherwise at this point. Demodulation was entirely justified in filing this action for patent infringement in its name alone based on the exclusive rights granted to Demodulation and the United States' prior acknowledgement of those rights.

Should the Court nevertheless address the issue of the scope of the license granted, there is no doubt whatsoever that Demodulation obtained some of the "proprietary sticks" from the bundle of the '591 patent rights at issue. O*rtho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d at 1031. Therefore, the Court must hold that Demodulation obtained all the substantial rights to the '591 patent or that the issue is premature for purposes of summary judgment.

### IV.     Partial Summary Judgment is Not Appropriate as Discovery is Required to Fully Oppose the Motion.

As mentioned throughout, the United States' motion for partial summary judgment must be denied because it is premature and the facts before the Court do not support judgment as a matter of law. Discovery is not yet complete. As set forth more fully in the accompanying declarations, there are factual issues as yet undeveloped which have a direct bearing on this motion. The United States' motion for summary judgment must be denied at this time and discovery should be allowed to proceed.

Summary judgment is inappropriate unless the tribunal permits adequate time for discovery. *Clear Creek Community Services District v. United States*, 100 Fed. Cl.

78, 82 (Fed. Cl. 2011)(*citations omitted*). Requests for additional discovery pursuant to Rule 56(d) (former Rule 56(f)) "are generally favored and are liberally granted." *Id.* (q*uoting Chevron U.S.A. Inc. v. United States,* 72 Fed. Cl. 817, 819 (Fed. Cl. 2006)). Of course, the United States Supreme Court has specifically instructed that summary judgment must be denied where the non-moving party has not had the opportunity to discovery information that is essential to its opposition. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, n. 5; *Celotex Corp v. Catrett*, 477 U.S. at 326 . The case-law is clear that the United States' motion for summary judgment cannot be granted at this time.

## Conclusion

For all the foregoing reasons, Demodulation respectfully requests that the Court deny the United States' motion for partial Summary Judgment as to Count III of the Third Amended Complaint.

Dated: Paramus, New Jersey
       July 11, 2014

                                             Respectfully submitted,

                                             CALLAGY LAW
                                             *A Limited Liability Company*

                              By:    */s/Benjamin D. Light, Esq.*
                                       Benjamin D. Light, Esq.
                                       Mack-Cali Centre II
                                       650 From Road – Suite 565
                                       Paramus, New Jersey 07652
                                       Telephone:   (201) 261-1700
                                       Facsimile:    (201) 261-1775
                                       E-mail:       blight@callagylaw.com

                                       *Attorneys for Plaintiff, Demodulation, Inc.*

ORIGINAL of the foregoing
filed this 11th day of July, 2014
through ECF with the Clerk
of the United States Court of
Federal Claims

By:     */s/Benjamin D. Light, Esq.*