# UNITED STATES
# COURT OF FEDERAL CLAIMS

DEMODULATION, INC.,

               Plaintiffs,

      - against –

USA,

               Defendants.

CASE NO.:  <u>1:11-cv-00236-TCW</u>

### PLAINTIFF DEMODULATION, INC.'S OPPOSITION TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF ALL PATENTS

**Keith A. McKenna**
The McKenna Law Firm
96 Park Street
Montclair, NJ 07042
(973) 509-0050
Fax: (973) 509-3580
Email:
keith.mckenna@mcklaw.net
*Lead Counsel for Plaintiff*

*Co Counsel*:
Ernest D. Buff
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, New Jersey 07921
(908) 901-0220
Fax:  (908) 901-0330
Email: ebuff@edbuff.com

**Table of Contents**

Table of Authorities ................................................................................................................ 3

List Of Exhibits ....................................................................................................................... 4

I.     INTRODUCTION ....................................................................................................... 5

II.    BACKGROUND .......................................................................................................... 6

III. Inference of Patent Infringement in Numerous Devices ........................................... 7

IV. The Full Scope of the Government's Actions to Infringe ......................................... 9

   A. The Government Violated the Rules of Discovery ................................................ 9

   B. The Department of Energy (DOE) Lied about the Government Uses of Microwire ........... 11

III.   Summary Judgment Is Not A Permissible Remedy For Incomplete Infringement
Contentions; Even If It Were, Summary Judgment Here Is Improper Because Demodulation's
Contentions Are Sufficient ................................................................................................ 12

   1.   Summary Judgment Is Not The Appropriate Remedy ........................................ 12

   2.   Plaintiff's Infringement Contentions Should be found Sufficient, or in the alternative,
   Plaintiff should be permitted to amend its claim charts ........................................... 14

I.     CONCLUSION ......................................................................................................... 16

**Table of Authorities**

**Cases**

*Aster Research Technologies, Inc. v. Raba-Kistner Infrastructure, Inc.,* Case No. SA-07-CA-93-H (W.D. Tex. Aug. 4, 2011) ...................................................................................... 10

Berger v. Rossignol Ski Co., No. C 05- 02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) ............................................................................................................................. 13

Network Caching Tech., LLC v. Novell, Inc., No. C-01-2079 VRW, 2002 WL 32126128, at *3–4 (N.D. Cal., Aug. 13, 2002) ("Network Caching I") ...................................... 13, 14

O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1364-67 (Fed. Cir. 2006) . 14

Renesas Tech. Corp. v. Nanya Tech. Corp., No. C 03-05709 JF (HRL), 2004 WL 2600466, at *2 (N.D. Cal., Nov. 10, 2004) ....................................................................................... 13

**Rules**

Patent L.R. 3-6 ..................................................................................................................... 5

Rule 3.4 ................................................................................................................................. 9

**List Of Exhibits**

**Exhibit 1**: Certification of Dr. Hnatio [***Exhibits A-I*** in Certification of Dr. Hnatio]

        ***Exhibit A***: Curriculum vitae of Dr. John Hnatio

        ***Exhibit B***: Dr. Hnatio's Declaration as required by the January 21, 2015, Order

        ***Exhibit C***: Letter from Senator Thomas Coburn to Secretary of Energy Chu

        ***Exhibit D***: Department of Energy response to Senator Coburn

        ***Exhibit E***: Listing of U.S. Government related terms for Microwire

        ***Exhibit F***: Technical descriptions of accused Government devices

        ***Exhibit G***: Device using the plaintiff's microwire product to enhance the guidance and accurate detonation of precision guided munitions

        ***Exhibit H***: Certification of Mr. Anthony Cantonese

        ***Exhibit I***: Note from Mr. Cantonese to U.S. Government Counsel Hausken

# I.  INTRODUCTION

Rather than litigating on the merits of Plaintiff's ("Demodulation") claims, the Defendant (the "Government" / "USG") has decided to disingenuously utilize gamesmanship and semantics to hide its infringement.  Demodulation provided all information reasonably available to it at the time it filed its infringement contentions and accompanying claim charts in November 2015.  Defendant's summary judgment motion proffered that "*Demodulation lacks essential evidence necessary for proving infringement for every asserted patent claim*". Defendant Summary Judg. Motion, Dkt. 193. Ironically, Demodulation's alleged lack of "*essential evidence*" was purposefully tailored by Defendant. Demodulation has been intentionally denied the discovery necessary to do an orthodox claim-by-claim analysis by the Government.  The Government's call for summary judgment fails to properly present the true scope of the Government's actions to prevent disclosure of evidence essential to the conduct of any orthodox claim-by-claim analysis of the plaintiff's portfolio of patents.

Though Demodulation's infringement contentions and / claim charts served on Defendant in November 2015 should be found sufficient under the local rules, in the interest of expediting adjudication on the merits, Demodulation has contemporaneously moved before the Court seeking leave to amend its infringement contentions and / claim charts pursuant to Patent L.R. 3-6.  In the contemporaneously filed motion, Demodulation asks the Court for leave based upon a finding of good cause permitting it to amend its claim charts served on Defendant as part of its infringement contentions on November 19, 2015 in order to provide a more detailed infringement analysis to the extent that it is deemed necessary. As set forth in Demodulation's contemporaneously filed motion, Demodulation went through extraordinary, unduly burdensome

measures using forensic expertise in garnering further evidence for its infringement assertions against the Defendant.

What is more, the Government's call for summary judgment is deficient for other reasons. First, Demodulation has been intentionally denied the discovery necessary to do an orthodox claim-by-claim analysis by the Government. Second, the Government's call for summary judgement fails to properly present the true scope of the Government's actions to prevent disclosure of evidence essential to the conduct of any orthodox claim-by-claim analysis of the plaintiff's portfolio of patents.

Summary Judgment should be denied because there are genuine disputes as to material facts. First, Demodulation's infringement contentions / and claim charts submitted in November 2015 should be found sufficient to meet its obligations in light of the Government's failure to provide evidence. At the very least, the contentions and claim charts submitted represent genuine disputes as to material facts. Alternatively, Summary Judgment should be denied and Demodulation be afforded the opportunity to amend its claim charts and grant its motion showing good cause.

## II.    BACKGROUND

Under the local patent rules Defendants were *supposed to* produce "source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of" the accused products pursuant to Patent L.R. 3-4(a). But the production never occurred because the military and intelligence devices that infringe on Demodulation's patents are unattainable, being classified by the U.S. Government at the Top Secret (TS), Secret (S) and Confidential (C) levels.

Shielding itself from Demodulation's infringement assertions using the classification of evidence, all information relating to Defendant's classified uses of Plaintiff's microwire and microwire integrated products have been withheld under assert state secrets privilege. As such, the Government's production was not sufficient to show the operation of any aspect or elements of the accused devices, as required under Patent L.R. 3-4(a). Now, the Government is essentially using its asserted state secrets privilege as a sword, as it contends Demodulation "lacks evidence" – the very evidence the Government withheld under state secrets privilege. Demodulation contends that the Government's actions in this respect have been calculating and purposeful.

Plaintiff was denied the discovery essential to conduct an orthodox claim by claim analysis against specific Government devices and therefore when it submitted its November 2015 infringement contentions Demodulation intended to supplement the charts as it worked tirelessly to find more evidence. Plaintiff's scientific and technical experts have successfully inferred infringement of each of the asserted patent infringement claims in multiple devices intended for military and intelligence uses. In spite of the fact that the Government has intentionally withheld, by virtue of classification and abuse of the Court's protective order, material evidence proving infringement of plaintiff's patent claims, the plaintiff and his experts have nonetheless successfully found numerous examples, across multiple Government agencies, where microwire and/or radio frequency devices infringing on the plaintiff's patent claims were built by the U.S. Government or under Government specifications by contractors for classified Government uses. Exhibit 1: Certification of Dr. Hnatio, *et seq*.


**III. Inference of Patent Infringement in Numerous Devices**

Although plaintiff was denied the discovery essential to conduct an orthodox claim by claim analysis against specific Government devices, plaintiff's scientific and technical experts have successfully inferred infringement of each of the asserted patent infringement claims in multiple devices intended for military and intelligence uses. Military and intelligence devices that infringe are classified by the U.S. Government at the top secret (TS), secret (S) and confidential (C) levels and were neither identified nor released to the plaintiff under the active period of discovery in any redacted unclassified form. In spite of the fact that the Government has intentionally withheld, by virtue of classification and abuse of the Court's protective order, material evidence proving infringement of plaintiff's patent claims, the plaintiff and his experts have nonetheless successfully inferred numerous examples, across multiple Government agencies, where microwire and/or radio frequency devices infringing on the plaintiff's patent claims were built by the U.S. Government or under Government specifications by contractors for classified Government uses. Exhibit 1: Certification of Dr. Hnatio, *et seq*.

All of the information contained in this document was found via public sources save the five unclassified heavily redacted originally classified reports demonstrating the construction and use of in-situ pressure sensor devices in nuclear weapons. But even in the instance of the five unclassified redacted Government reports, they proved to be of no value since the Government exercised the state secrets privilege to intentionally redact any information useful to a patent infringement analysis. To make the necessary scientific and technical correlations to establish these inferences, plaintiff relied on an exhaustive search of public sources of information and the unique knowledge of consultant experts who are familiar with technologies that have both sensitive national security and commercial uses, i.e., dual use technologies. Exhibit 1: Certification of Dr. Hnatio, *et seq*. See Exhibit F: Technical descriptions of accused Government

devices; <u>Exhibit G</u>: Device using the plaintiff's microwire product to enhance the guidance and accurate detonation of precision guided munitions.


## IV. The Full Scope of the Government's Actions to Infringe

The full scope of U.S. Government activities to infringe on the plaintiff's patents in this matter goes well beyond the assertions in Plaintiffs infringement contentions; examples of infringed devices to include the following eight essential elements. First, the Government has obstructed the plaintiff's rightful access to material evidence of patent infringement. Second, by so doing the Government has violated the Court's rules for discovery. Third, the Government lied to Congress about the broad uses of plaintiff's microwire technology by the Government and used appropriated funds to construct infringing devices. Fourth, the Government fraudulently obtained patents by false attestations to the United States Patents and Trademarks Office in which they did not claim the plaintiff's prior art. Fifth, the Government committed fraud by selling licenses for these fraudulent patents. Sixth, the Government is abusing the state secrets privilege. Seventh, the Government is abusing the Court's protective order. Eighth, the Government failed to report egregious ethical violations to the Court and other appropriate authorities as required to assure the faithful administration of justice in the matter of Demodulation.

## A. The Government Violated the Rules of Discovery

Just as plaintiff's former counsel defied the Court's rules for discovery in the matter of Demodulation, so did the Government. Rule 3.4, Fairness to Opposing Party and Counsel, of the American Bar Association Model Rules for Professional Conduct, states that a lawyer shall not:

*(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably*

*diligent effort to comply with a legally proper discovery request by an opposing party.*

In conducting their research, plaintiff's experts found hundreds and hundreds of documents relating to the Government's development, use and sale of microwire that should have been, but were not, released to the plaintiff by the Government during the active period of discovery. This information includes U.S. Government sponsored technical reports, Congressional appropriations for the development of microwire products, the U.S. Government funding of competing microwire development projects under the Department of Energy's (DOE) Laboratory and Plant Directed Research and Development (LPDRD) Program, U.S. Government bogus "cover patents" that infringe on plaintiff's patents, U.S. Government licenses for the bogus patents, contracts in which the Government sought to buy microwire to infringe on plaintiff's patents and huge numbers of internal e-mail correspondence. This information was directly and readily available to the Government by simply requesting it from the National Security Agency (NSA), the Department of Defense (DOD), the Department of Energy (DOE), the Department of the Treasury (DOT) and other agencies. This requirement is not overly burdensome and is usually accomplished by a simple memorandum requesting a brief description of the classified or unclassified applications of the technology involved. This information if relevant then becomes the subject of further highly focused investigation. So, either the Government never requested the information from other agencies or it was intentionally withheld. The letter from General Harencak to Senator Coburn annexed at <u>Exhibit C</u> in combination with the five unclassified redacted reports the Government was forced to provide under discovery serves as irrefutable proof that the Government was lying when it contended that it was not using plaintiff's microwire and radio frequency patented ideas to build devices.

In *Aster Research Technologies, Inc. v. Raba-Kistner Infrastructure, Inc.,* Case No. SA-07-CA-93-H (W.D. Tex. Aug. 4, 2011) the plaintiff filed a patent infringement action and

maintained that action even though it had documents in its possession that invalidated its own patent. In so doing, it violated court orders to produce the documents and was properly sanctioned by the Court for this misconduct. The district court found that "[l]litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under 35 U.S.C. § 285." In *Aster Research Technologies, Inc. v. Raba-Kistner Infrastructure, Inc.* the plaintiff's lawyer failed to produce important documents, including documents that eventually proved fatal to plaintiff's patent infringement claims. This misconduct occurred even though the district court had specifically ordered the plaintiff to produce the documents in its possession and these documents were, in fact, in the plaintiff's possession. In addition, the district court "found that plaintiff committed litigation misconduct by falsely alleging that no license agreement existed regarding the patent-in-suit." The case is a strong reminder of the importance of candor with the Court and the opposing parties. In the matter of Demodulation, the Government has abandoned candor in their dealings with the Court and the plaintiff by intentionally withholding hundreds upon hundreds of documents both classified and unclassified that they well know would prove fatal to their false contention that Demodulation does not have the essential evidence proving infringement as demonstrated in accused Government devices.

**B. The Department of Energy (DOE) Lied about the Government Uses of Microwire**

On May 10, 2010, Brigadier General Garrett Harencak of the Department of Energy's (DOE), National Nuclear Security Administration (NNSA), wrote a letter in response to a request from then Senator Thomas Coburn dated requesting a complete description of all work within the DOE relating to the research, manufacture and use of plaintiff's microwire. Copies of General Harencak's response and the Senator Coburn's letter and are annexed at Exhibit C and

Exhibit D, respectively.  The response did not include the millions of dollars of on-going work within the DOE to infringe plaintiff's patents to replicate their microwire product and to build microwire integrated devices for internal Government military and intelligence uses.

In the matter of Demodulation the Government failed to produce these and hundreds upon hundreds of other critical documents to the plaintiff during the active period of discovery in violation of the Court's rules.  These documents, of which many are classified, demonstrate that the Government has violated each of the plaintiff's patent infringement claims in multiple devices.  By failing to produce essential evidence in the matter of Demodulation as required during the active period of discovery the Government, yet again, violated Rule 3.4 (d) of the American Bar Association Model Rules for Professional Conduct which requires that the Government make a "reasonably diligent effort to comply with a legally proper discovery request by an opposing party."  The fact that the Government did not make a "reasonably diligent effort" or worse, intentionally withheld essential evidence to shield it from view by the Court and the plaintiff, is indisputable.


**III.     Summary Judgment Is Not A Permissible Remedy For Incomplete Infringement Contentions; Even If It Were, Summary Judgment Here Is Improper Because Demodulation's Contentions Are Sufficient**

1. Summary Judgment Is Not The Appropriate Remedy.

Defendant's proposition that summary judgment is an appropriate remedy for allegedly incomplete and/or unsupported infringement contentions is not the law. Defendant falsely insinuates that summary judgment of noninfringement is a proper remedy where a party serves preliminary infringement contentions (PIC) that are incomplete or do not disclose enough evidence to prove infringement. Defendant cites no case for such an astonishing result; indeed,

that result would be improper because there is "no requirement that [the patentee] thoroughly present and successfully defend its theories of infringement in the confines of a PIC chart." Network Caching Tech., LLC v. Novell, Inc., No. C-01-2079 VRW, 2003 WL 21699799, at *5 (N.D. Cal. Mar. 21, 2003) ("Network Caching II"). Rather, contentions are "essentially a discovery device intended to streamline the discovery process by tak[ing] the place of a series of interrogatories that defendants would likely have propounded." Renesas Tech. Corp. v. Nanya Tech. Corp., No. C 03-05709 JF (HRL), 2004 WL 2600466, at *2 (N.D. Cal., Nov. 10, 2004) (internal quotations omitted), citing Network Caching Tech., LLC v. Novell, Inc., No. C-01-2079 VRW, 2002 WL 32126128, at *3–4 (N.D. Cal., Aug. 13, 2002) ("Network Caching I"). Granting summary judgment on infringement contentions that are incomplete or do not disclose enough evidence to prove infringement would be like throwing out a patentee's case because it answered interrogatories insufficiently. Here, such relief would be particularly inappropriate because Defendant withheld evidence from Plaintiff under states secret, knowing that Defendant would then have to somehow find evidence on its own – which would require supplementation of Plaintiff's contentions as pointed out in the infringement contentions provided to Defendant. The closest Defendant comes to a case on point is Berger v. Rossignol Ski Co., No. C 05- 02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006). However, in Berger, the court granted summary judgment because the contentions affirmatively stated facts that negated infringement. Id. at *6. The patent in Berger required a boot rotate "relative to" a binding, but the contentions described a boot rotating "with" the binding. Id. at *5-6. The patentee did not dispute that this failed to show infringement, and the court found that, "under plaintiffs' infringement contentions[,] defendant's accused device … does not infringe as a matter of law." Id. Here, Defendant does not contend that Plaintiff's contentions affirmatively disprove infringement, only

that Plaintiff could have provided more detail or evidence in its infringement contentions. Plaintiff has not alleged facts that affirmatively show noninfringement; Berger is therefore entirely distinguishable.

Other cases Defendant cites discuss entirely different issues that are not relevant on a motion for summary judgment. They generally stand for the unremarkable proposition that a patentee is limited to the infringement theories disclosed in its Patent Local Rule 3-1 infringement contentions. See, e.g., O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1364-67 (Fed. Cir. 2006) (affirming application of Local Patent Rule that "good cause" for amending infringement contentions requires a showing of diligence).

## 2. Plaintiff's Infringement Contentions Should be found Sufficient, or in the alternative, Plaintiff should be permitted to amend its claim charts

To comply with Patent Local Rule 3-1, a party need only set forth "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves." Network Caching II, 2003 WL 21699799, at *4 (emphasis added). Plaintiff's contentions meet this requirement, as they relate claim terms to specific elements of the Accused Products, using photos and publicly available information. No more is required. Indeed, Defendant does not even suggest that Plaintiff's theories are not adequately disclosed, contending only that certain factual details were omitted and that the evidence disclosed in the contentions does not prove infringement.

If the claim charts / infringement contentions are found insufficient, Plaintiff respectfully requests leave by way of the contemporaneously filed motion to amend its infringement contentions and claim chart, especially owing to the Defendant's activities in preventing Plaintiff from receiving evidence in this case.

## I.     CONCLUSION

Plaintiff respectfully requests the Court deny Defendant's Motion, or in the alternative, allow Plaintiff the opportunity to amend its claim charts.


Respectfully submitted,


DATED: <u>February 12, 2016</u>

_____
By Ernest D. Buff

**Keith A. McKenna**
The McKenna Law Firm
96 Park Street
Montclair, NJ 07042
(973) 509-0050
Fax: (973) 509-3580
Email: keith.mckenna@mcklaw.net
*Lead Counsel for Plaintiff*

**Ernest D. Buff**
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, New Jersey 07921
(908) 901-0220
Fax:   (908) 901-0330
Email: ebuff@edbuff.com
*Co-Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

       I hereby certify that on 12th day of February 2016, the foregoing has been served on all counsel of record identified in the below Service List by email transmission.


**SERVICE LIST**

**Gary Lee Hausken**
U. S. Department of Justice - Civil Div.
Post Office Box 480
Ben Franklin Station
Washington, DC 20044
(202) 307-0342
Fax: (202) 307-0345
Email: gary.hausken@usdoj.gov



DATED: <u>February 12, 2016</u>

_____
By Ernest D. Buff

**Keith A. McKenna**
The McKenna Law Firm
96 Park Street
Montclair, NJ 07042
(973) 509-0050
Fax: (973) 509-3580
Email: keith.mckenna@mcklaw.net
*Lead Counsel for Plaintiff*

**Ernest D. Buff**
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, New Jersey 07921
(908) 901-0220
Fax:  (908) 901-0330
Email: ebuff@edbuff.com
*Co-Counsel for Plaintiff*